UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOTT SANFORD, et al., | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | *Civil No. 09-22-P-H* |
| | ) | |
| THE NATIONAL ASSOCIATION FOR | ) | |
| THE SELF-EMPLOYED, INC., et al., | ) | |
| | ) | |
| *Defendants* | ) | |

MEMORANDUM DECISION ON MOTION TO AMEND COMPLAINT

Plaintiffs Scott Sanford and John Locke move to amend their complaint to modify two causes of action, for negligent misrepresentation and breach of contract, and to add two new claims, for violations of the Unfair Trade Practices Act ("UTPA"), 5 M.R.S.A. § 205-A *et seq*., and the Consumer Solicitation Sales Act ("CSSA"), 32 M.R.S.A. § 4661 *et seq*. *See* Plaintiff's Motion To Amend Complaint ("Motion") (Docket No. 43) at 2-3; [Proposed] Plaintiffs' First Amended Class Action Complaint ("Proposed Amended Complaint"), Exh. 1 thereto. The defendants, the National Association for the Self-Employed, Inc. ("NASE") and NASE Member Services, Inc. ("Member Services"), oppose the motion on the grounds of futility and unreasonable delay. *See* Defendants' Opposition to Plaintiffs' Motion To Amend Complaint ("Opposition") (Docket No. 51). For the reasons that follow, I grant in part and deny in part the motion to amend.

**I.  Applicable Legal Standards**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has clarified:

> The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case. If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted); *see also, e.g., Adorno v. Crowley Towing & Transp. Co*., 443 F.3d 122, 126 (1st Cir. 2006) (same).

In this case, the more liberal standard of assessing futility applies. While the defendants did file a motion for partial summary judgment, *see* Docket No. 13, no scheduling order has issued, and no discovery deadline has yet been set, *see generally* ECF Docket. As of the date of the filing of the instant motion, no discovery had been undertaken. *See* Motion at 5.

As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).[1]

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation and internal punctuation omitted). In distinguishing sufficient from insufficient pleadings, "a context-specific task," the court must "draw on its judicial experience and common sense." *Id.* at 1950.

## II. Factual Background

On or about December 26, 2008, the plaintiffs filed a complaint in the Maine Superior Court alleging negligent misrepresentation (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), violation of the duty to act in good faith imposed by 13-B M.R.S.A.

---

[1] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

§ 717 (Count IV), constructive fraud (Count V), violation of 24-A M.R.S.A. § 1901 *et seq.* (Count VI), and failure to account (Count VII). *See* Plaintiffs' Class Action Complaint ("Original Complaint"), attached to Notice of Removal (Docket No. 1), ¶¶ 99-162. On January 20, 2009, the defendants removed the case to this court. *See* Notice of Removal.

On January 26, Member Services filed a motion to dismiss for lack of personal jurisdiction. *See* Docket No. 8. On February 20, NASE filed separate motions for judgment on the pleadings as to all seven counts against it and, alternatively, for partial summary judgment as to Counts III, IV, VI, and VII. *See* Docket Nos. 12-13. I issued recommended decisions on May 21 that Member Services' motion to dismiss be denied, *see* Docket No. 39, and on May 26 that NASE's motion for judgment on the pleadings be granted as to Counts II through VII, as well as a portion of Count I alleging negligent misrepresentation as to the value and quality of certain member benefits, and otherwise denied, *see* Docket No. 40.

On June 12, both the plaintiffs and the defendants filed partial objections to my recommended disposition of the motion for judgment on the pleadings, and the plaintiffs filed the instant motion to amend. *See* Docket Nos. 41-43. On July 6, after the defendants filed their opposition to the instant motion, *see* Docket No. 51, Judge Hornby adopted my report and recommendation regarding NASE's motion for judgment on the pleadings, *see* Docket No. 52. On July 13, the plaintiffs filed their reply in support of their motion to amend. *See* Docket No. 53.

The plaintiffs seek to amend their complaint to assert four claims: (i) a negligent misrepresentation claim similar to that asserted in the Original Complaint but predicated on the conduct of NASE sales agents rather than of NASE generally, *compare* Original Complaint ¶¶ 99-110 *with* Proposed Amended Complaint ¶¶ 100-12; *see also* Motion at 2, (ii) a breach of

4

contract claim substantially similar to that asserted in the Original Complaint but modified to allege breach of an implied contract, *compare* Original Complaint ¶¶ 111-19 *with* Proposed Amended Complaint ¶¶ 113-21; *see also* Motion at 2, (iii) a new claim for violation of the UTPA, *see* Proposed Amended Complaint ¶¶ 122-29; Motion at 2, and (iv) a new claim for violation of the CSSA, *see* Proposed Amended Complaint ¶¶ 130-42; Motion at 2.

### III.  Discussion

### A.  Futility

### 1.  Negligent Misrepresentation Claim (Count I)

The Proposed Amended Complaint alleges that NASE sales agents committed negligent misrepresentation by failing to disclose to prospective NASE members that NASE (i) grossly underreported its earnings, (ii) concealed the systematic transfer of millions of dollars to related parties, a practice that was unjustified and fraudulent, (iii) through its alter ego, Member Services, paid undeserved and grossly excessive compensation to its officers and directors, (iv) concealed the very existence of Member Services and the role that it played in these illegal activities, (v) concealed that, despite claims to the contrary, some "member benefits" were not being offered at a discount, and (vi) concealed that it had never requested discounts on those benefits.  *See* Proposed Amended Complaint ¶ 108.

The defendants concede that the plaintiffs state a claim as to two of the alleged negligent misrepresentations, the first and the fourth.  *See* Opposition at 2-3; Defendant the National Association for the Self-Employed, Inc.'s Objections to Recommended Decision on Its Motion for Judgment on the Pleadings ("NASE Rec. Dec. Objection") (Docket No. 41) (incorporated by reference in Opposition) at 2-3 n.1; *compare* Original Complaint ¶ 106(a) & (e) *with* Proposed

5

Amended Complaint ¶ 108(a) & (d).[2]  They challenge the remaining allegations.  *See* Opposition at 2-3; NASE Rec. Dec. Objection at 5-11.  The plaintiffs offer no response in their reply brief to the defendants' arguments concerning Count I.  *See* Plaintiffs' Reply in Support of [Their] Motion To Amend the Complaint ("Reply") (Docket No. 53).  However, they joined issue on the merits of those arguments in their response to NASE's objection to my recommended decision, *see* Plaintiffs' Memorandum in Response to Defendant National Association for the Self-Employed, Inc.'s Objection to Recommended Decision on Its Motion for Judgment on the Pleadings ("Plaintiffs' Objection Response") (Docket No. 50), and in fairness I have taken that response into account for these purposes.[3]

The defendants contend that the second alleged misrepresentation, that sales agents failed to disclose NASE's concealment of its systematic transfer of millions of dollars to related entities, fails to state a claim because it fails to allege an actionable *partial* disclosure, no disclosure whatsoever having allegedly been made about NASE's financial deals with its business partners.  *See* NASE Rec. Dec. Objection at 9-10; *compare* Original Complaint ¶ 106(f) *with* Proposed Amended Complaint ¶ 108(b).[4]  The plaintiffs counter that paragraph 41 of the

---

[2] NASE makes no concession as to the merits of these claims.  It reserves all legal and factual challenges to them that might be brought at summary judgment or during or after trial.  *See* NASE Rec. Dec. Objection at 2-3 n.1.

[3] Judge Hornby's adoption of my recommended decision does not preclude my consideration, for these purposes, of the merits of the points raised by NASE in its objection to that recommended decision.  In its objection, NASE raised different grounds for judgment on the pleadings on the negligent misrepresentation claim than it had raised in briefing the underlying motion.  *Compare* Recommended Decision at 18 *with* NASE Rec. Dec. Objection at 4-11.  Judge Hornby's adoption of my recommended decision reasonably can be construed only as adopting the rationale given in the recommended decision, rather than expressing any view as to the merits of the points belatedly raised in NASE's objection.  *See Koken ex rel. Reliance Ins. Co. v. Auburn Mfg., Inc*., 341 F. Supp.2d 20, 22 (D. Me. 2004) ("[A] belated argument which *could have been,* but was not, presented to the Magistrate Judge in the first instance [cannot] be raised or asserted on appellate review of the Magistrate Judge's decision.") (emphasis in original).

[4]  The second alleged misrepresentation, contained in paragraph 108(b) of the Proposed Amended Complaint, corresponds most closely with paragraph 106(f) of the Original Complaint, in which the plaintiffs allege that NASE "concealed that its directors and officers approved numerous and substantially overpriced, unnecessary and one sided financial deals with friends and business partners[.]"  *Compare* Proposed Amended Complaint ¶ 108(b) *with* Original Complaint ¶ 106(f).  Thus, with respect to proposed paragraph 108(b), I take the defendants to have *(continued on next page)*

6

Original Complaint contains sufficient representations as to how the association spends the dues and fees collected from members to state a claim for partial disclosure.  *See* Plaintiffs' Objection Response at 6.

> It is a well-established principle of tort law that one who voluntarily elects to make a partial disclosure is deemed to have assumed the duty to tell the whole truth, i.e., to make full disclosure even though the speaker was under no duty to make the partial disclosure in the first place. . . .  The comments to section 551 [of the Restatement (Second) of Torts] recognize that there is a distinction between remaining silent and saying nothing about a defect, which is not actionable unless a special duty exists, and disclosing half truths or misleading[,] ambiguous statements which another may rely upon to his detriment.

*Bradley v. Kryvicky*, 574 F. Supp.2d 210, 220 (D. Me. 2008).

While the Proposed Amended Complaint omits the references contained in paragraph 41, it contains sufficient allegations to state a claim of partial disclosure.  Specifically, it alleges that (i) NASE sales agents described NASE as a nonprofit organization dedicated to advancing the interests of the self-employed and emphasized that, as a nonprofit, it had no ulterior motives and was wholly independent of the insurance company MEGA Life, and (ii) the sales scheme was designed to conceal the true nature of the business relationship between the supposedly independent NASE and the for-profit MEGA Life, in which NASE's function was to tout MEGA Life products and funnel millions of dollars into the coffers of related entities.  *See* Proposed Amended Complaint ¶¶ 48-51.  The defendants accordingly fall short of demonstrating that assertion of this claim would be futile.

The defendants challenge the third asserted misrepresentation, that NASE sales agents concealed NASE's payment of undeserved and grossly excessive compensation to its officers and directors, on the basis that the plaintiffs do not state a claim of partial disclosure.  *See* NASE

---

incorporated by reference arguments made in their objection to my recommended decision as to original paragraph 106(f).

Rec. Dec. Objection at 10-11; *compare* Original Complaint ¶ 106(d) *with* Proposed Amended Complaint ¶ 108(c).  This is so, the defendants argue, because (i) any claim about the *excessive* nature of the compensation could be brought only on behalf of the association, not on behalf of individual members, and thus a related misrepresentation claim must be premised on alleged concealment of the amount of the compensation, not its asserted excessiveness, and (ii) the plaintiffs do not allege that compensation amounts reported on NASE's Form 990s were false. *See* NASE Rec. Dec. Objection at 10-11.

The plaintiffs reason that because (i) they allege that NASE represented itself as a legitimate nonprofit organization, (ii) nonprofit organizations are prohibited from enriching their officers and directors, and (iii) they allege that NASE officers and directors were paid excessive compensation, they state a claim of misleading partial disclosure.  *See* Plaintiffs' Objection Response at 6-7.

The defendants have the better argument.  The plaintiffs could not have relied to their detriment on a negligent misrepresentation concerning directors' and officers' compensation.  As the defendants suggest, *see* NASE Rec. Dec. Objection at 10, individual NASE members have no monetary damages claim predicated on NASE's alleged payment of excessive compensation, *see* Recommended Decision at 12-16.

Turning to the fifth and sixth asserted negligent misrepresentations, namely, the alleged concealment that some member benefits were not being offered at a discount and that no discount had been requested as to those benefits, the defendants argue that the plaintiffs fail to state a claim because (i) the representation that member benefits were provided at a discount was non-actionable "dealer's talk" and, (ii) in any event, there is no allegation that members were told that all benefits would be offered at a discount and, therefore, there is no misrepresentation.

*See* NASE Rec. Dec. Objection at 5-9; *compare* Original Complaint ¶ 106(g) & (h) *with* Proposed Amended Complaint ¶ 108(e) & (f).  The plaintiffs rejoin that (i) the "dealer's talk" caselaw is inapposite because it pertains to expressions of opinions of overall value and quality, not to false statements of very specific facts and, (ii) from the statements allegedly made to them, NASE members reasonably inferred that all member benefits were offered at a discount.  *See* Plaintiffs' Objection Response at 3-6.

In the Proposed Amended Complaint, the plaintiffs allege, in relevant part, that NASE sales agents emphasized that "NASE offered discounted benefits[,]" Proposed Amended Complaint ¶ 49, and specifically told Sanford and Locke that NASE "offered its members various discounted benefits[,]" *id.* ¶¶ 75, 88.  These are general statements as to the value and quality of member benefits rather than "very specific facts."  *Compare, e.g., Letellier v. Small*, 400 A.2d 371, 377 (Me. 1979) (the "defendant's misrepresentation of the results of [a] soil test" was not "dealer's talk," that is, "an expression of opinion of overall value and quality of the land" stated in a "picturesque and laudatory style[,]" but rather "a false statement of a very specific fact") (citation and internal quotation marks omitted).  They therefore constitute non-actionable "dealer's talk."  *See, e.g., Eaton v. Sontag*, 387 A.2d 33, 37-38 (Me. 1978) ("In the absence of false representations of fact respecting the actual expenses incurred in the development, there would be no actionable fraud, for misrepresentations as to value and quality of land made by the vendor, even though made with fraudulent intent, are not actionable. . . . The law recognizes the fact that sellers may naturally overstate the value and quality of the articles or property which they have to sell.  Everybody knows this, and a buyer has no right to rely upon such statements.").

In any event, the Proposed Amended Complaint contains no allegation that NASE sales agents told prospective members that *all* member benefits were discounted, or made any statement from which prospective members reasonably could have inferred that to be the case. *See* Proposed Amended Complaint ¶¶ 49, 75, 88.

A claim of negligent misrepresentation predicated on the allegations in question would be futile.

For the foregoing reasons, the defendants make a persuasive case that assertion of a claim of negligent misrepresentation predicated on the third, fifth, and sixth alleged misrepresentations would be futile.  They do not demonstrate that this would be the case with respect to the first, second, and fourth alleged misrepresentations.

### 2.  Breach of Contract Claim (Count II)

The plaintiffs propose to amend their complaint to add a breach of contract claim identical to that originally asserted, but for the allegation that the contract breached was implied, rather than express.  *Compare* Proposed Amended Complaint ¶¶ 113-21 *with* Original Complaint ¶¶ 111-19.  As the defendants point out, *see* Opposition at 3-4, this change does not save the claim.  Regardless of the source of the plaintiffs' asserted contractual rights, their breach of contract claim is futile for the reasons articulated in my Recommended Decision and adopted by the court.  *See* Recommended Decision at 19-22.

### 3.  Claimed Violation of UTPA (Count III)

The plaintiffs seek to assert a new claim of violation of the UTPA, alleging that (i) they "purchased NASE goods, services and property primarily for personal, family or household purposes[,]" Proposed Amended Complaint ¶ 126, and (ii) NASE engaged in unfair or deceptive acts or practices that included "making false and inaccurate claims as to [its] relationship with

MEGA Life and the related entities; . . . concealing the scheme to defraud NASE members by systematically overcharging them for fees, dues and member benefits in order to enrich the related entities; and . . . providing false information about the association's income, assets and disbursements[,]" *id*. ¶ 127.

The defendants contend that the claim is futile because NASE membership was not in fact purchased "primarily for personal, family or household purposes[,]" as required to implicate the protections of the UTPA, but rather primarily for self-employment or small business purposes. *See* Opposition at 4-5 (quoting 5 M.R.S.A. § 213(1)). They add that, to the extent that the plaintiffs mean to complain about the purchase of MEGA Life insurance, the plaintiffs acknowledge that they purchased that insurance from a MEGA Life agent. *See id*. at 5; Proposed Amended Complaint ¶¶ 47-48.

As an initial matter, I do not construe the Proposed Amended Complaint to state a claim of UTPA violation predicated on the plaintiffs' purchase of MEGA Life insurance. The plaintiffs acknowledge that, in selling MEGA Life insurance, the agents with whom they met were acting as "MEGA Life sales agents." *Id*. ¶ 47. MEGA Life is not a named defendant. In addition, in asserting their UTPA claim, the plaintiffs focus on their purchase of NASE goods, services, and property. *See id*. ¶ 126.

Setting aside the plaintiffs' conclusory allegation that they purchased NASE goods, services, and property primarily for personal, family, or household purposes, nothing in their proposed complaint supports a finding that they purchased NASE *membership* primarily for those purposes. They allege, in relevant part, that NASE "professes to be a trade association which represents the self-employed[,]" *id*. ¶ 4, that, after purchasing MEGA Life insurance products, Sanford and Locke were offered membership in NASE, *see id*. ¶¶ 72, 87, that Sanford

and Locke were informed that NASE was a nonprofit organization, independent of MEGA Life, that "advocated for the self-employed and offered its members various discounted benefits," *id.* ¶ 75; *see also id.* ¶ 88, that "NASE merchandise included membership in the organization itself, allegedly discounted medical and pharmaceutical services, and discounted products such as personal computers[,]" *id.* ¶ 74; *see also id.* ¶ 92, that one of the member benefits was a "discount pharmacy card," *id.* ¶¶ 75, 88, that Sanford and Locke purchased NASE memberships and discount pharmacy cards, *see id.* ¶¶ 76, 89, and that a separate fee of $4 per month was charged for those cards, *see id.* ¶¶ 76-77, 89-90.

While the plaintiffs allege that NASE did not in fact serve the interests of the self-employed in the sense that it diverted membership fees to MEGA Life and other persons and entities, *see, e.g., id.* ¶¶ 52-66, they offer no factual allegation from which one could infer that the membership itself primarily served personal, family, or household purposes.

That said, the plaintiffs do allege that both Sanford and Locke purchased discount pharmacy cards for which they made segregable payments. *See id.* ¶¶ 76-77, 89-90. One reasonably can infer that Sanford and Locke, each of whom has a wife and minor children, *see id.* ¶¶ 1-2, purchased that benefit primarily for personal, family, or household purposes. The remedial provision of the UTPA broadly encompasses "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes[.]" 5 M.R.S.A. § 213(1). I do not see, nor do the defendants explain, how it is material that the pharmacy card purchase was made as an incident of NASE membership.

While Count III is futile to the extent that it targets the purchase of NASE membership, the defendants have not shown it to be futile to the extent that it focuses on the separate

purchase, as an incident of NASE membership, of goods, services, or property primarily for personal, family, or household purposes.

### 4.  Claimed Violation of CSSA

The plaintiffs finally seek to assert a claim of violation of the CSSA, alleging, *inter alia*, that (i) NASE sold certain merchandise to them at their homes in circumstances in which they did not solicit the initial contact with NASE, but rather with MEGA Life, (ii) NASE made these sales without a written contract, (iii) the terms of the sale or offer were never reduced to writing, and (iv) NASE never informed them of their right to void the contracts.  *See* Proposed Amended Complaint ¶¶ 134-38.

> The CSSA provides, in relevant part:

> Where merchandise is sold or contracted to be sold, whether under a single contract or under multiple contracts, to a consumer as a result of or in connection with a salesman's direct contact accomplished by means of and including, but not limited to, a personal visit or a telephone call, upon the consumer other than at the seller's place of business, without the consumer soliciting the initial contact or sale, the consumer may void the contract or sale by giving notice of his intention not to be bound by the contract or sale and returning or making available for return any merchandise delivered pursuant to the terms of this subchapter.

32 M.R.S.A. § 4663.

The defendants argue that assertion of this claim is futile because the necessary unsolicited initial contact that the CSSA is designed to guard against is not present.  *See* Opposition at 5.  They note that, as the plaintiffs themselves allege, Locke and Sanford contacted MEGA Life agents and arranged for those agents to visit their homes.  *See id.*; *see also* Proposed Amended Complaint ¶¶ 43, 47-48.  They reason that the plaintiffs' "suggestion that there was an offensive unsolicited sales transaction by the NASE simply because the MEGA Life agent happened to also solicit membership in the NASE at some point during a meeting which Plaintiffs themselves initiated and arranged, is both hypertechnical and wrong."  Opposition at 5.

They add: "This is not the type of unsolicited door-to-door sales transaction which the [CSSA] was created to address." *Id*.

The plaintiffs rejoin that the defendants cite no authority in support of their interpretation of the statute. *See* Reply at 6. They contend that because the solicitation of NASE membership was uninvited, that conduct falls within the purview of the statute. *See id*. at 5-6.

Neither side cites, nor can I find, caselaw from Maine or other jurisdictions considering whether a solicitation to purchase products or services other than those with respect to which an initial contact is made falls within the purview of the CSSA or similar types of consumer protection statutes. Nonetheless, the language of section 4663 and caselaw generally construing it persuade me that the defendants are correct that its focus is unsolicited initial contact. The statute provides for remedies in instances in which merchandise is sold or contracted to be sold "without the consumer soliciting the *initial* contact or sale[.]" 32 M.R.S.A. § 4663 (emphasis added). The word "initial" most naturally is read to modify both "contract" and "sale." *See also First of Me. Commodities v. Dube*, 534 A.2d 1298, 1301 (Me. 1987) (describing the CSSA as "allow[ing] a consumer to void a contract for the sale of merchandise within three days of executing the agreement if the salesman made an unsolicited first contact with the consumer personally or by phone anywhere other than at the salesman's place of business"); *State v. Tibbetts*, No. Civ.A. CV-00-43, 2006 WL 367847, at *2 (Me. Super. Ct. Jan. 19, 2006) (describing the CSSA as "govern[ing] the sale or contracts of sale of goods or services where contact is made by the seller, not at the seller's place of business and without the consumer soliciting the initial contact").

Amendment of the complaint to assert a cause of action for violation of the CSSA accordingly would be futile.

14

**B.  Unreasonable Delay**

The defendants finally oppose the motion to amend on the ground that the plaintiffs'
attempt to file yet another rambling complaint of nearly 150 paragraphs in the wake of the
court's dismissal of most of the seven claims asserted in the original, prolix 177-paragraph
complaint would impose an undue burden and delay on them.  *See* Opposition at 6-7.  They add
that, if the court is inclined to permit any amendment, it should hold the plaintiffs to the strictest
possible application of Rule 8 and permit only a short, plain statement of their claim that
conforms to the substantive rulings that the court has made about the viability of their causes of
action.  *See id*. at 7.

I decline to deny the plaintiffs' motion to amend on the ground of undue delay.  As
discussed above, only two of the four counts that the plaintiffs wish to press survive the
defendants' futility challenge, and those two counts survive only in part.   In the circumstances,
allowance of the filing of an amended complaint will impose no undue burden on the defendants
and cause no undue delay in these proceedings, which remain at an early stage.

**IV.  Conclusion**

For the foregoing reasons, the motion to amend is **GRANTED** as to those claims
surviving the defendants' futility challenge and otherwise **DENIED**.  As discussed above, the
claims that survive that challenge are Count I (negligent misrepresentation), but only as to three
of six asserted misrepresentations, and Count III (violation of the UTPA), but only to the extent
predicated on the separate purchase, as an incident of NASE membership, of goods, services, or
property primarily for personal, family, or household purposes.

The plaintiffs are **DIRECTED** to file, no later than five business days from the date of
this opinion, an amended complaint setting forth only those claims that survive the defendants'

15

futility challenge and containing only factual allegations relevant to those surviving counts, renumbering paragraphs and counts as necessary.

**<u>SO ORDERED</u>**.

Dated this 31st day of July, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge