UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **SCOTT SANFORD AND JOHN LOCKE,** *on behalf of themselves and all others similarly situated*,<br><br>**PLAINTIFFS**<br><br>v.<br><br>**NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED, INC. AND NASE MEMBER SERVICES, INC.,**<br><br>**DEFENDANTS** | **CIVIL NO. 09-22-P-H** |

## DECISION AND ORDER ON PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

Two Maine residents have sued a non-profit business association and its for-profit affiliate for negligent misrepresentation and unfair business practices. They seek class certification. The issue here is whether they can satisfy Rule 23(b)(3)'s requirement that common questions of law or fact predominate over questions affecting only individual members. Because I find that the necessary predominance is lacking, I **DENY** the Amended Motion for Class Certification.

### FACTS

The plaintiffs Scott Sanford and John Locke purchased memberships and discount prescription drug cards from the defendant National Association for the Self-Employed, Inc. ("NASE") when they acquired health insurance

benefits from MEGA Life and Health Insurance Company ("MEGA Life").[1] The First Amended Complaint alleges that, as his COBRA coverage was about to expire, Scott Sanford contacted MEGA Life in June 2004 to discuss its health insurance products, and arranged to meet with Christine Gregor,[2] a MEGA Life sales agent. First Am. Compl. ¶ 46 (Docket Item 57). They met on June 21, 2004, and Sanford agreed to purchase MEGA Life health insurance. Id. ¶¶ 47, 48. "Based on [Gregor's] oral representations Sanford agreed to join NASE as a 'basic member,' and further agreed to purchase a discount pharmacy card [from NASE] at a cost of $4.00 per month." Id. at 50. John Locke contacted MEGA Life in the spring of 2005, when he was looking for a new individual health plan. Id. ¶ 58. On March 18, 2005, Locke met with MEGA Life sales agent Barbara Shaw and agreed to enroll in MEGA Life's "Catastrophic Hospital Expense Plan Policy." Id. ¶ 59. "After Locke had agreed to purchase this coverage Shaw began to talk about NASE and encouraged him to join." Id. ¶ 60. Shaw told Locke that "NASE was a nonprofit organization, independent of MEGA Life, that NASE advocated for the self-employed and that it offered its members various discounted benefits. One of these benefits was a 'discounted pharmacy card.'" Id. ¶ 61. Based on Shaw's representations, Locke agreed to join NASE as a "premier" member and agreed to purchase the discount pharmacy card, which cost $12.00 per quarter. Id. ¶ 62.

---

[1] The plaintiffs allege that MEGA Life is a subsidiary of HealthMarkets, Inc., which maintains control over the products and services that NASE offers to its members. First Am. Compl. ¶¶ 8, 14 (Docket Item 57).

[2] Now named Christine Gregor Proulx. Decl. of Christine Gregor Proulx ¶ 1 (Docket Item 72).

Sanford and Locke allege that during both their meetings the respective MEGA Life sales agents "created the following false impressions: that NASE was a legitimate nonprofit, that it was independent of MEGA Life, that it would charge reasonable dues and fees, and that it would place the interests of its members ahead of others'." Id. at ¶¶ 52, 65. They also allege that the sales agents "explicitly or implicitly encouraged [the plaintiffs] to place [their] trust in NASE even though [they] knew, or should have known, that NASE had consistently misrepresented the quality of MEGA Life insurance and had overcharged its members for the sole purpose of enriching related entities." Id. at ¶¶ 53, 66.

## PROCEDURAL POSTURE

Sanford and Locke sued NASE, a non-profit, and NASE Member Services, Inc., NASE's for-profit subsidiary. After earlier court rulings, they have two remaining claims for relief in their First Amended Complaint: one for negligent misrepresentation under Maine common law and one under Maine's Unfair Trade Practices Act. They claim that the defendants: (1) misappropriated members fees and dues, (2) failed to disclose that NASE underreported its earnings, (3) provided inaccurate, incomplete or misleading information regarding NASE's financial dealings and close relationship with MEGA Life and Health Insurance Company ("MEGA Life") and related entities, (4) concealed a scheme to defraud NASE members by overcharging them fees, dues and member benefits in order to enrich related entities, (5) provided false information about the association's income, assets and disbursements, (6) concealed the systematic transfer of millions of dollars to related parties,

and (7) concealed the very existence of NASE Member Services. Id. ¶¶ 73-79, 88-89. They seek compensatory damages, costs and attorney's fees. Id. at Prayer for Relief. They have filed an Amended Motion seeking certification as a class under Fed. R. Civ. P. 23(b)(3), representing "all Maine residents who belonged to NASE at any time between June 21, 2004 and February 29, 2008." Pls.' Am. Mot. For Class Cert. at 1 (Docket Item 67). The defendants object to the motion for class certification.

## ANALYSIS

### *Class Certification*

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Class-wide issues predominate if (1) resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and (2) if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

In considering the predominance question, I am not limited to the complaint, but examine and rely upon the available factual record to determine whether the plaintiffs have satisfied the standard. College of Dental Surgeons of Puerto Rico v. Connecticut General Life, 585 F.3d 33, 41-42 (1st Cir. 2009) ("In all but the clearest of cases, the existence vel non of a sufficiently defined

4

class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification. Reviewing the complaint alone is not normally a suitable method for determining whether a class eventually can be certified." (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 n.15 (3d Cir. 2008) and In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 6-7 (1st Cir. 2005)).

I turn, therefore, to the legal and factual issues under the two substantive claims.

### *Negligent Misrepresentation (Count I)*

Maine has adopted § 552 of the Restatement (Second) of Torts as the appropriate standard for negligent misrepresentation claims. Jordan-Milton Mach., Inc. v. F/V Teresa Marie, II, 978 F.2d 32, 36 (1st Cir.1992) (citing Chapman v. Rideout, 568 A.2d 829, 830 (Me. 1990); Diversified Foods, Inc. v. First Nat'l. Bank, 605 A.2d 609, 615 (Me. 1992)). The elements of such a claim are delineated by § 552(1), which states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). The question, then, is how the class will prove the existence of these elements so that I can determine whether the legal or factual questions subject to generalized proof are more substantial than the issues subject only to individualized proof.

5

Here, the misrepresentations are based on oral statements and omissions, made by different sales agents, in different meetings with different members.[3] The plaintiffs have not asserted that the sales pitch to each association member was scripted or that sales agents used standardized written materials.[4] They do, however, allege a uniform approach in the marketing of NASE memberships. But the factual record that they present to me to support uniformity on this element is very skimpy. I bypass determination of whether they can support their claim of uniform misrepresentations, because they clearly cannot prove class reliance by common proof.

As an essential element of their claim, the plaintiffs must establish that class members justifiably relied on the misrepresentations in deciding to purchase the NASE membership. The evidentiary record available to me on the motion to certify establishes that NASE members say they were interested in NASE for a *variety* of reasons. "While some individuals may be interested in health and medical care benefits available through the NASE, others express interest in only other benefits such as legislative advocacy for small business,

---

[3] For example, at Sanford's June 21, 2004, meeting, sales agent Gregor "explicitly and implicitly encouraged Sanford to place his trust in NASE even though she knew, or should have known, that NASE had consistently misrepresented the quality of MEGA Life insurance and had overcharged its members for the sole purpose of enriching the related entities." First Am. Compl. ¶ 53. Likewise, for Locke's March 18, 2005, meeting, sales agent Shaw "explicitly and implicitly encouraged Locke to place his trust in NASE even though she knew, or should have known, that NASE had consistently misrepresented the quality of MEGA Life insurance and had overcharged its members for the sole purpose of enriching the related entities." Id. ¶ 66.

[4] The sales agents were "not provided with any written talking points, scripts, videos or recordings to be used for the sale of memberships in the NASE." Proulx Decl. ¶ 7.

tax and business planning assistance, educational programs and seminars."[5] Decl. of Christine Gregor Proulx ¶ 8. One sales agent explains that her "presentation of the NASE and NASE membership benefits varied from individual to individual depending on what a particular individual expressed an interest in. For example, if an individual was interested in receiving tax advice, I would focus on that topic and direct the individual to portions of the NASE Membership Guide which discussed the tax advice and planning assistance available through the NASE." Id. ¶ 9. Similarly, when electing to join NASE, "members would express very different reasons for joining. Where one person might say he joined because the pharmacy card or instant benefits appealed to him, another might say the business advisory services were the thing that convinced him, and yet another might explain wanting to support the organization's legislative work in Washington, D.C." Id. at ¶ 10. The plaintiffs do not allege that all the representations made in the sales pitch to prospective NASE members were untrue.[6] On this record, I conclude that the proof of reliance is likely to be that while some class members may have relied on the alleged false statements in the sales pitch, other individuals purchased NASE

---

[5] While there are allegations that sales agents made misrepresentations or omissions regarding NASE's position/actions on health care, First Am. Compl. ¶ 27 (Robert Hughes, President of NASE, "served on the board of an insurance industry front group and NASE made regular financial contributions to another such group" and he "lobbied for federal legislation which would authorize the creation of association health plans ("AHPs")", which would "prevent states from regulating foreign insurance carriers and would leave individual insurance consumers largely without protection."), the Amended Complaint does not challenge the sales agents for misrepresenting NASE's activities generally in legislative advocacy for small businesses. Moreover, there are no allegations regarding misrepresentations or omissions regarding NASE's services for tax and business planning, educational programs or seminars.

[6] Indeed, the plaintiffs did not respond to the defendants' factual assertions by filing a reply. I have not searched earlier filings on earlier motions to determine if there is evidence there to support their claim for class certification.

7

memberships simply because they wanted to belong to an organization that lobbies on behalf of the self-employed. Therefore, determining whether there was justifiable reliance on the challenged misrepresentations in the case of any given class member will require an individualized adjudication.

The critical question is whether the reliance element of this claim defeats Rule 23(b)(3) predominance. Even where a common core of facts exists, "a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Rule 23(b)(3), Advisory Notes to 1966 Amendment; see also Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 341-42 (4th Cir. 1998) (noting that "because reliance must be applied with factual precision, plaintiffs' fraud and negligent misrepresentation claims do not provide a suitable basis for class-wide relief"); Castano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) ("a fraud cause of action cannot be certified when individual reliance will be an issue"); Mowbray v. Waste Management Holdings, Inc., 189 F.R.D. 194, 198 (D. Mass. 1999) (explaining that when "the individual issue of reliance" must be litigated, certification is "inappropriate"); In re Jackson Natl. Life Ins. Co. Premium Litig., 183 F.R.D. 217, 221-22 (W.D. Mich. 1998); Rothwell v. Chubb Life Ins. Co. of America, 191 F.R.D. 25, 31 (D.N.H. 1998) (agreeing with "majority view that certification generally is inappropriate when individual reliance is an issue"); Mack v. General Motors Acceptance Corp., 169 F.R.D. 671, 678 (M.D. Ala. 1996) (stating that, where individual reliance must be shown, "[t]here is no way to resolve the reliance issue on a class-wide basis"); Basic Inc. v. Levinson, 485

U.S. 224, 242 (1988) (explaining that the "fraud-on-the-market" theory, which includes a presumption of reliance, is what permits securities class actions to proceed despite individualized nature of reliance inquiry and the requirements of Rule 23); Millett v. Atlantic Richfield Co., 2000 WL 359979, at *12 (Me. Super.) (court denied certification of class on negligent misrepresentation and fraud claims finding that plaintiffs would have to show individualized reliance to recover under Maine law). In this case, although the negligent misrepresentation claim may be characterized by common proof concerning the alleged misrepresentations and omissions, the individualized issues of reliance will require extensive plaintiff-specific proof that will substantially outweigh the common proof. These individual issues defeat predominance: questions of fact that are common to the putative class do not "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

***Unfair Trade Practices Act (Count II)***

Certification of the UPTA claim fails for the same reason. "To justify a finding of unfairness [under the Maine UTPA], the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." State v. Weinschenk, 868 A.2d 200, 206 (Me. 2005) (citing Tungate v. MacLean-Stevens Studio, Inc., 714 A.2d 792, 797 (Me. 1998)).

Although the Law Court does not list reliance explicitly as an element of a UTPA claim, reliance and causation are related concepts, and in the context of fraud, they are often intertwined. See Restatement (Second) of Torts § 548A

9

("A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance"). Here, the plaintiffs allege that their UTPA damages were caused by deceptive or misleading statements about NASE. But it is not possible for members of the class to prove that deceptive or misleading statements caused them damage unless they show that they relied on the statements. If they did not rely, they could not have been harmed by them, and the statements, while deceptive and unfair, cannot establish a violation of the UTPA for which a private plaintiff can seek a damage remedy. Bartner v. Carter, 405 A.2d 194, 200 (Me. 1979) ("the individual suing under section 213 must prove that by purchasing or leasing he has suffered a 'loss' of money . . . as a result of the prohibited conduct of the defendant"). As with the common law misrepresentation claim, this individualized proof requirement prevents the plaintiffs from satisfying the predominance standard on their UTPA claim.

In addition, a Maine UTPA claim requires proof of a purchase primarily for household or family purposes, i.e., a consumer purchase.[7] Missing from the motion is any suggestion that the plaintiffs will prove a consumer purchase by common class-wide proof. The only NASE member benefit alleged that

---

[7] The UTPA provides in relevant part:
> Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

5 M.R.S.A. § 213(1).

10

would be considered a consumer good or service is the discount pharmacy card. But the proposed class definition is not limited to NASE members who elected to purchase the prescription card benefit. Instead, the class definition includes all NASE members who were enrolled at any point during the class period.

Accordingly, the plaintiffs' Amended Motion for Class Certification is **DENIED**.

**SO ORDERED.**

**DATED THIS 9TH DAY OF FEBRUARY, 2010**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**